UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. S2-4:21-CR-00262-SEP |
| | ) | |
| DEMORION LITTLE, | ) | |
| | ) | |
| Defendant. | ) | |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree as follows:

1. **PARTIES**

The parties are the defendant Demorion LITTLE, represented by defense counsel Talmage

Newton, and the United States of America (hereinafter "Government"), represented by the Office

of the United States Attorney for the Eastern District of Missouri.  This agreement does not, and

is not intended to, bind any governmental office or agency other than the United States Attorney

for the Eastern District of Missouri.  The Court is neither a party to nor bound by this agreement.

2. **GUILTY PLEA**

Pursuant to Rule 11(c)(1)(B), Federal Rules of Criminal Procedure, in exchange for the

defendant's voluntary plea of guilty to the two counts in the Substitute Information, the

Government agrees that no further federal prosecution will be brought in this District relative to

the defendant's agreement to steal and re-distribute marijuana, or the homicide of Rocoby Rodgers

on February 21, 2021, or the homicides of Kortlin Williams and Johnnie Jones, to include the

1

nonfatal shooting of K.S., on March 16, 2021, in furtherance of said conspiracy, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that, regardless of the guideline calculations agreed to herein, the parties shall jointly request a sentence of 28 total years. The parties recognize that this joint recommendation is not binding on the Court, who has the full authority to sentence the Defendant in accordance with the applicable statutory schemes.

The Defendant also agrees, pursuant to the guilty pleas to the offenses charged in Counts I and II, to forfeit to the United States all property subject to forfeiture under the applicable statute.

3.   **ELEMENTS**

As to Count One, the defendant admits to knowingly violating Title 21, United States Code, Sections 841(a)(1) and 846, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

(a) Beginning at an unknown time, but including February 25, 2021 through ~~the date of~~ June 30, 2021 ~~the Superseding Indictment~~, within the Eastern District of Missouri and elsewhere, the defendant and other persons known and unknown to the Government reached an agreement or came to an understanding to distribute and possess, with the intent to distribute, marijuana;

(b) That the defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some time while it was still in effect; and

2

(c) That at the time the defendant joined in the agreement or understanding, he knew the purpose of the agreement.

As to Count Two, the defendant admits to knowingly violating Title 18, United States Code, Sections 2, 924(c) and (j)(2), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

(a) On or between February 25, 2021 and March 16, 2021, in the City of St. Louis, within the Eastern District of Missouri, the defendant was committing the offense of conspiracy to possess with the intent to distribute marijuana, as charged in Count One; and

(b) The defendant aided and abetted the discharges of one or more firearms in furtherance of said marijuana trafficking conspiracy; and

(c) The discharge of the firearms resulted in the deaths of Rocoby Rodgers (on February 25, 2021) and Kortlin Williams and Johnnie Jones (on March 16, 2021) during the course of the marijuana trafficking conspiracy, which were manslaughter, as defined by Title 18, United States Code, Section 1112.

## 4.  **FACTS**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial.  These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning at a time unknown, but up to and including February 25, 2021, and continuing until at least March 14, 2021, defendant LITTLE entered into an agreement with co-defendant Antaveon Kent and/or others known and unknown to the Government to attempt to steal then

redistribute quantities of marijuana. LITTLE understood the purpose of the agreement at the time he entered into the agreement with Kent and others, and he entered the agreement voluntarily.

On February 25, 2021, officers with the St. Louis Metropolitan Police Department (SLMPD) located victim Rocoby Rodgers deceased in his vehicle from a gunshot wound at 2319 Blair Avenue, within the City of St. Louis, in the Eastern District of Missouri. Rodgerscellular telephone was located at the scene and forensically examined.

Investigators discovered that earlier in the day on February 25, 2021, LITTLE, utilizing his Facebook account with username "Street Sweepers," sent a message using Facebook Messenger to Rodgers inquiring about purchasing two quarter-pound packages of marijuana. LITTLE then asked the victim what he charged for a quarter pound purchase. LITTLE and Rodgers then continued their conversation about negotiating the price for the marijuana sale. Expert testimony at trial would establish that two quarter-pound packages are consistent with an intent to re-distribute the marijuana as opposed to personal use. At approximately 7:52 pm, LITTLE contacted Rodgers via text message using a telephone number subscribed to him, (314) 685-4349, to arrange a time and location for the transaction to occur. At approximately 9:21 pm, LITTLE texted Rodgers "2319 Blair," the location of the homicide, as the place to meet him to conduct the marijuana deal. At 10:35 pm, LITTLE texted Rodgers for the last time, asking where he was.

At 10:43 pm, police were called to 2319 Blair Avenue and located Rodgers deceased in his vehicle, having been shot by LITTLE and/or his associates in order to steal the marijuana LITTLE had purported to want to purchase. No marijuana was left at the scene, as LITTLE and/or others had taken it. LITTLE and his associates discharged their firearms at Rodgers, killing him, for the

4

purpose of stealing the marijuana. Later that evening, LITTLE utilized his Facebook account, "Street Sweepers," to advertise that he had marijuana for sale.

On March 16, 2021, Kortlin Williams and Johnnie Jones were located by police at 1109 Montgomery Street in the City of St. Louis, within the Eastern District of Missouri. Both men were deceased in their vehicle, having succumbed to gunshot wounds. K.S., a third victim, was driving the vehicle after having sustained a gunshot wound himself. In furtherance of the investigation, members of the SLMPD Homicide Unit conducted a forensic examination of Williams' (hereinafter "Williams") cellular device.

In examining Williams' cellular telephone, investigators located a series of messages exchanged through the social media platform Facebook. Williams utilized the vanity name "Kortlin Keith Williams" while messaging through the Facebook platform. In an exchange with another individual utilizing the vanity name "Bts Sweepers," it appeared to investigators that "Bts Sweepers" was attempting to procure an amount of marijuana from Williams. The messages between "Bts Sweepers" and Williams continued between 10:40 AM on March 16, 2021 and approximately 5:28 PM the same day. SLMPD received the call for the shooting at approximately 5:35 PM.

In an effort to ascertain the identity of the individual utilizing the Facebook account "Bts Sweepers," investigators obtained a search warrant for that Facebook account, through which they were able to identify the user as defendant Demorion LITTLE (hereinafter "LITTLE"). In examining LITTLE's messages leading up to the homicides on March 16, 2021, investigators located messages between LITTLE and co-defendant Kent, who admitted to investigators utilizing the Facebook vanity name "Trauma Traumatized." In a series of messages dated March 14, 2021

5

(two days before the homicides), Kent and LITTLE discussed needing to procure a firearm. At 5:50 PM on March 14, 2021, Kent sent a screenshot of Williams and victim Johnnie Jones' (hereinafter "Jones") Facebook accounts to LITTLE. Kent sent this message intending to show LITTLE that these two individuals would be good targets from whom to procure marijuana.

On March 16, 2021, in between sending messages to Williams setting up a proposed marijuana deal, LITTLE also exchanged communications with Kent. Between 2:08 PM and 4:05 PM, Little and Kent exchanged at least five (5) calls. Between 4:06 PM and 4:29 PM, LITTLE provided his address to Kent so that Kent could pick LITTLE up in a vehicle driven by Kent. Both LITTLE and Kent were armed with firearms.

Surveillance footage obtained from around the scene of the homicide on March 16, 2021 shows Kent driving a white Jeep with distinctive rear-fender damage. It also shows Kent and LITTLE setting up at the scene prior to Williams and Jones arriving to conduct a marijuana transaction. At some time after Williams and Jones pulled up to the agreed upon location, armed themselves with firearms, both Kent and LITTLE fired gunshots into the vehicle, killing Williams and Jones and injuring K.S, who was also occupying the vehicle. Approximately 621 grams of marijuana was located inside the victims' vehicle when police arrived. Expert testimony would establish this amount of marijuana is consistent with distribution. Testimony at trial would also establish that the presence of marijuana in the vehicle suggests that LITTLE and Kent's marijuana transaction was either unsuccessful or only partially successful. LITTLE agrees that the killing of Williams and Jones with firearms, and the nonfatal shooting of K.S., were done to further his agreement with Kent to steal and redistribute a quantity of marijuana. Based on the evidence, the

parties agree that the amount of marijuana for which LITTLE is accountable, including the foreseeable conduct of his co-conspirator(s), is 847 grams.

5.   **STATUTORY PENALTIES**

COUNT ONE

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $1,000,000.00, or both such imprisonment and fine.  The Court shall also impose a period of supervised release of not less than three (3) years.  In the event defendant is subject to any undischarged or anticipated term of imprisonment imposed by any court, defendant has been apprised by counsel that the sentence imposed in this case may be imposed consecutively to the undischarged or anticipated term of imprisonment.

COUNT TWO

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 15 years, a fine of not more than $250,000.00, or both such imprisonment and fine.  The Court may also impose a period of supervised release of not more than five (5) years.  The defendant also fully understands that the crime to which a guilty plea is being entered in Count Two requires a mandatory minimum term of imprisonment of at least ten (10) years, which must be imposed consecutively to Count One, and any other sentence. In the event defendant is subject to any undischarged or anticipated term of imprisonment imposed by any court, defendant has been apprised by counsel that the sentence imposed in Count Two must be imposed consecutively to the undischarged or anticipated term of imprisonment.

**6.    U.S. SENTENCING GUIDELINES (2021 MANUAL)**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

**a.  Chapter 2 Offense Conduct:**

COUNT ONE

**(1)  Base Offense Level:** The parties agree that the base offense level would be 6, as found in Section 2D1.1, as the quantity of marijuana for which the defendant is accountable is less than one kilogram. However, because Rocoby Rodgers, Kortlin Williams, and Johnnie Jones were all killed under circumstances that would constitute voluntary manslaughter under Title 18, United States Code, Section 1112, the base offense level should cross-reference U.S.S.G. Section 2A1.3, which creates a base offense level of 29.

**(2)  Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: None.

**b.  Chapter 3 Adjustments:**

**(1)  Acceptance of Responsibility:** The parties agree that two (2) levels should be deducted pursuant to Section 3E1.1(a), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If the Government subsequently receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction,

8

the Government may present said evidence to the Court and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1 without violating the plea agreement.

  **c. <u>Other Adjustment(s)/Disputed Adjustments</u>:** The parties have no further agreement regarding any other adjustments.

  **d. <u>Estimated Total Offense Level</u>:**  The parties estimate that the Total Offense Level is 27. Depending on the underlying offense and the defendant's criminal history, the defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds the defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. The defendant has discussed this possibility with defense counsel. Both parties reserve the right to argue that the defendant is or is not a Career Offender.

<u>COUNT TWO</u>

**<u>Chapter 2 Offense Conduct</u>:**

  **(1) <u>Base Offense Level</u>:**  The parties agree that the guideline for a violation of Title 18, United States Code, Section 924(j)(2) offenses is found in USSG §2A1.3. That section provides that an offense involving discharging a firearm in furtherance of a drug trafficking crime resulting in death, which constitutes manslaughter, has a base offense level of 29 (USSG §2A1.3(a)).

  **(2) <u>Specific Offense Characteristics</u>:**  None.

  **b. <u>Chapter 3 Adjustments</u>:**

  **(1) <u>Acceptance of Responsibility</u>:** The parties agree that two (2) levels should be deducted pursuant to Section 3E1.1(a), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of the defendant's intention to plead guilty.

9

The parties agree that the defendant's eligibility for this deduction is based upon information presently known.  If the Government subsequently receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the Government may present said evidence to the Court and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1 without violating the plea agreement.

     **c.  Other Adjustment(s)/Disputed Adjustments:** The parties have no further agreement regarding any other adjustments.

     **d.  Estimated Total Offense Level:**  The parties estimate that the Total Offense Level is 27.  Depending on the underlying offense and the defendant's criminal history, the defendant could be a Career Offender pursuant to Section 4B1.1.  If the Court finds the defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI.  The defendant has discussed this possibility with defense counsel.  Both parties reserve the right to argue that the defendant is or is not a Career Offender.

APPLICABLE TO ALL COUNTS

     **e.  Criminal History:**  The determination of the defendant's Criminal History Category shall be left to the Court.  Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category.  The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

     **f.  Effect of Parties' U.S. Sentencing Guidelines Analysis:**  The parties agree that the Court is not bound by the Guidelines analysis agreed to herein.  The parties may not have foreseen all applicable Guidelines.  The Court may, in its discretion, apply or not apply any Guideline

despite the agreement herein, and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

7.   **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS**

   **a. Appeal:**   The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

   **(1) Non-Sentencing Issues:**   The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

   **(2) Sentencing Issues:**   In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining the applicable Sentencing Guidelines range, sentences the defendant to 28 years, which is the joint recommendation of the parties, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category.  Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, adopts the agreed Total Offense Level, and sentences the defendant to 28 years.

**b. Habeas Corpus:**  The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:**  The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.   OTHER**

**a. Disclosures Required by the United States Probation Office:**  The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

**b. Civil or Administrative Actions not Barred; Effect on Other Government Agencies:**  Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation, or administrative action against the defendant.

**c. Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section

12

3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished.

      **d.  Mandatory Special Assessment:**  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing.  Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

      **e.  Possibility of Detention:**  The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

      **f.  Fines and Costs of Incarceration and Supervision:**  The Court may impose a fine, costs of incarceration and costs of supervision.  The defendant agrees that any fine imposed by the Court will be due and payable immediately.

      **g.  Forfeiture:**  The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States.  The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice.  By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

13

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant consents that the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9.   ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS

In pleading guilty, the defendant acknowledges, fully understands and, hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; and the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

14

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

## 10.   VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11.   CONSEQUENCES OF POST-PLEA MISCONDUCT

15

After pleading guilty and before sentencing, if the defendant commits any crime other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office, or fails to appear for sentencing, the Government, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12.   NO RIGHT TO WITHDRAW GUILTY PLEA

Pursuant to Federal Rule of Criminal Procedure 11(c) and (d), the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

8/4/2023
_____
Date

_____
ANGIE E. DANIS, #64805MO
Assistant United States Attorney

8/4/2020
_____
Date

_____
DEMORION LITTLE
Defendant

8-4-2023
_____
Date

_____
TALMAGE NEWTON
Attorney for Defendant

16